IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joseph L. Dickerson,<br>a/k/a Joseph Dickerson, Joseph Lee<br>Dickerson, | )<br>)<br>) | Case No. 8:12-02606-RBH-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden of Lieber Correctional<br>Institution, | )<br>) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 24.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28
U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for
relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on  September 7, 2012.[1]  [Doc.
1.]  On February 1, 2013, Respondent filed a motion for summary judgment and a return
and  memorandum.   [Docs.  24,  25.]   On  February  4,  2013,  the  Court  filed  an  Order
pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the
summary judgment procedure and of the possible consequences if he failed to adequately
respond to the motion.  [Doc. 26.]  Petitioner filed a response in opposition on April 8,
2013.  [Doc. 32.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing
date in the light most favorable to Petitioner, this action was filed on September 7, 2012.  [Doc. 1-2 (envelope
stamped as received by prison mailroom on September 7, 2012).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated in the Lieber Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Lexington County. [Doc. 1 at 1.] Petitioner was indicted in August 2000 for armed robbery [App. 717–18[2]] and in November 2001 for three additional counts of armed robbery and one count of criminal conspiracy[3] [App. 720–24]. On March 18, 2002, represented by Michael R. Ellisor ("Ellisor"), Petitioner proceeded to trial. [App. 1–558.] On March 21, 2002, the jury returned guilty verdicts on three of the four armed robbery charges and on the conspiracy charge, acquitting Petitioner on one armed robbery charge. [App. 542–43]. Petitioner was sentenced to twenty-five years imprisonment on each armed robbery count and five years imprisonment for conspiracy, all sentences to run concurrently. [App. 556.]

**Direct Appeal**

Petitioner filed a timely notice of appeal. On July 10, 2003, Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense filed a brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issue:

> The judge erred by refusing to declare a mistrial or, alternatively, to grant a new trial after the guilty verdicts, because a police officer testified that [Petitioner] was featured

---

[2]The Appendix can be found at Docket Entry Numbers 25-1 through 25-5.

[3]The Court notes that one of the armed robbery indictments is not included in the record before the Court.

2

> on an episode of "Midlands' Most Wanted," thereby placing his
> character in issue by falsely portraying him as a dangerous
> fugitive.

[Doc. 25-7 at 4.]  On January 6, 2004, the South Carolina Court of Appeals issued an

unpublished per curiam opinion affirming the convictions.  [Doc. 25-9.]  Remittitur was

issued on January 28, 2004.  [Doc. 25-10.]

**PCR Proceedings**

On August 23, 2004, Petitioner filed a pro se application for post-conviction relief

("PCR") in which he raised the following claims:

> (a)    Ineffective Assistance of Counsel;
> (c)    Violation of South Carolina Constitution;
> (b)    Violation of United States Constitution.

[App. 559–67.]  In support of his ineffective assistance of counsel claim, Petitioner alleged

the following facts, quoted substantially verbatim:

> 1) . . . [C]ounsel failed to object to prosecutorial misconduct
> that shifted the burden of proof to the applicant by creating an
> inference of guilt through inadmissible flight evidence and co-
> defendants convictions.
>
> 2) . . . [C]ounsel failed to object to the admission of prejudicial
> evidence.
>
> 3) . . . [C]ounsel failed to object to prosecutorial misconduct
> during the opening and closing arguments.
>
> 4) . . . [C]ounsel failed to object to inadmissible hearsay.
>
> 5) . . . [C]ounsel failed to request a misidentification jury
> charge.
>
> 6) . . . [C]ounsel failed to hold the state to its burden of proof.
>
> 7) . . . [C]ounsel failed to object to a jury charge that amended
> the original indictment to include an element not stated in the
> True Billed indictments.

3

8) . . . [C]ounsel failed to object to the knowing use of perjured testimony introduced by the State.

9) . . . [C]ounsel abandoned the applicant only defense.

10) . . . [C]ounsel failed to move for a mistrial based on prosecutorial misconduct for presenting personal inflammatory and prejudicial remarks to the jury concerning co-defendants testimony.

11) . . . [C]ounsel failed to move to suppress co-defendants statements and photo-line ups that was extremely prejudicial.

12) . . . [C]ounsel failed to object and move for a mistrial on extremely prejudicial testimony which was used to inflame the minds of the jury.

13) . . . [C]ounsel failed to move for a mistrial after the trial judge mad[e] a comm[en]t on the States evidence.

14) . . . [C]ounsel failed to prepare a defense, interview co-defendants, familiarize himself with the law, review police report and opening the door for prejudicial evidence to be admitted without objections.

15) . . . [C]ounsel failed to request for the trial judge to recuse himself or rem[a]in ne[]utral.

16) . . . [C]ounsel failed to raise a confrontation clause violation.

17) . . . [C]ounsel failed to object and move for a mistrial because the State improperly commented on the app[licant's] right to remain silent.

18) . . . [C]ounsel failed to object to the State shifting the burden to the applica[nt].

19) . . . [C]ounsel failed to meet the standard requirements for lawyers.

20) . . . [C]ounsel failed to move for a new trial based upon the state evidence d[oe]s no[ ]more than create a suspicio[n] of guilt by piling inference on top of inference.

4

21) . . . [C]ounsel failed to safe guard applicant rights.

[App. 561–64.]  In support of his claims that his federal and state constitutional rights were violated, Petitioner alleged that he received an unfair trial and was denied due process. [App. 564.]

An evidentiary hearing was held on June 16, 2008, where Petitioner was represented by Tommy A. Thomas.    [App. 574–699.]  At the hearing, testimony was received from Ellisor and Petitioner.  [*Id.*]  On October 19, 2008, the PCR court issued an order denying and dismissing the application with prejudice.  [App. 700–12.]

On November 3, 2008, Petitioner filed a motion to alter or amend pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure, arguing that the following issues presented at the PCR hearing be included in the court's final order and preserved for appeal:

1.  The burden-shifting consisted mainly upon the co-defendant's convictions and flight evidence;

2.  The closing argument consisted of vouching, personal opinions, and an indirect comment on Applicant's right to remain silent;

3.  The direct verdict consisted of all the State's evidence proved the conspiracy took place in another County, not alleged in the Indictment;

4.  The failing to request a copy of the mistrial transcript for impeachment purposes;

5.  The abandonment of the third-party guilt defense as the only defense; and

6.  The confrontation violation consisted of two (2) witnesses not being available for cross-examination in which Applicant was found guilty of (1) and not guilty of the other one.

5

[App. 713–14.]  The PCR court denied the motion on December 3, 2008, stating that it was not persuaded to alter or amend its judgment.  [App. 716.]

A notice of appeal was timely filed and served.  On November 29, 2010, Tristan M. Shaffer of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issues:

1.    Did the PCR court err in denying relief when trial counsel did not object to the State's opening statement and closing argument where the State shifted the burden of proof and appealed to the sympathy of the jury by asking the jury?

2.    Did the PCR court err in finding that Petitioner's due process rights were not violated by the State's destruction of the first set of photo line-ups which were the basis of arrest warrants being issued for a group of suspects that did not include Petitioner?

3.    Did the PCR court err in finding that trial counsel was ineffective in failing to object to Kathy Dillow's identification of Petitioner when the State failed to produce her in trial?[4]

[Doc. 25-11.]  The Supreme Court denied the petition on June 5, 2012 [Doc. 25-13] and issued remittitur on June 25, 2012 [Doc. 25-14].

_____

[4]Because the PCR court did not find trial counsel ineffective, the Court notes that this issue, as presented, contains a scrivener's error and should present an issue of whether the PCR court erred in *not* finding trial counsel ineffective for failing to object to the identification.

6

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 7, 2012 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:    Petitioner was denied a fair trial guaranteed by the Sixth Amendment when the Judge erred in refusing to declare a mistrial, or alternately, to grant a new trial after the guilty verdict.
>
> *Supporting Facts*:    Petitioner's presumption of innocence was removed when a police officer testified before the jury that Petitioner was featured on an episode of "Midlands' Most Wanted," placing Petitioner's character in issue by falsely portraying him as a dangerous fugitive. This removed Petitioner's constitutionally guaranteed presumption of innocence before the jury deliberated on the evidence at the culmination of the trial.
>
> **Ground Two**:    Did the PCR Court err where the petitioner was denied the effective assistance of counsel when counsel failed to object to the State's opening and closing arguments which shifted the state's burden of proof and appealed to the jury's sympathy.
>
> *Supporting facts*:    Throughout the State's opening statement and closing argument the Solicitor made improperly prejudicial comments which were not objected to by counsel. These comments were focused on questionable identifications made by Inabinet, Williamson and Dillow, based on corroboration from Petitioner's mistrial (first trial). Trial counsel testified on PCR that he should have objected to the comments.
>
> **Ground Three**:    Did the PCR Court err in finding the Petitioner's due process rights were violated by the State's destruction of the first set of photo lineups which were the basis of the warrants being issued for [a] group of suspects that did not include Petitioner?

7

*Supporting facts*:    Prior to suspecting Petitioner was involved in the robbery, police investigated another set of suspects that did not include Petitioner.  Dillow did not identify Petitioner, but other suspects.  Following issuance of the warrants Police suspected a group that included Petitioner, but omitted the suspects identified by Dillow. Dillow's identification was exculpatory, yet Inves. McDermott testified he destroyed the initial photo lineup as he "believed" it w[a]s not pertinent.

**Ground Four**:    Did the PCR Court err when Petitioner was denied the effective assistance of counsel and the right to confrontation when Dillow's identification of Petitioner was introduced at trial, Dillow was not produced at by the State and counsel failed to object or secure the witness.

*Supporting facts*:    When the State impermissibly introduced Dillow's photo lineup of Petitioner, through Inves. McDermott, without an in-camera suppression hearing to determine admissibility, and without the testimony of Dillow. Co[u]nsel failed to object under the Sixth Amendment Confrontation Clause.   The State utilized Dillow's untested identification ("testimony") in their closing argument.

**Ground Five**:    Did the PCR Court err when Petitioner was denied a fair trial and the effective assistance of counsel guaranteed by the Sixth Amendment when trial counsel failed to secure a copy of the transcript of the first trial with which to impeach State witnesses who gave inconsistent testimony?

*Supporting facts*:    Counsel could not successfully impeach witnesses Shane Williamson and Ben Inabinet with their prior inconsistent testimony in the first trial, which resulted in a mistrial, where counsel did not obtain a copy of that transcript for those purposes.   This structural error requires reversal.[5]

---

[5]Petitioner also indicated Ground Five was not raised to the highest South Carolina court with jurisdiction to hear it "based on the ineffective assistance of appellate counsel in failing to raise a properly preserved, meritorious structural error.  This comports with the cause and prejudice showing."  [Doc. 1 at 14.]

8

> **Ground Six**:  Did appellate counsel fail to provide the effective assistance of counsel on appeal as of right, as guaranteed by the Sixth Amendment, on a properly preserved structural error?
>
> *Supporting facts*:  Petitioner properly preserved this structural error by trial counsel by raising it in the post-conviction relief application, testifying on the PCR record, and raising it in a subsequent Rule 59 (e) Motion to Alter or Amend the Order of Dismissal.  Appellate counsel failed to raise this structural error in lieu of less meritorious issues.[6]

[Doc. 1.]

As stated, on February 1, 2013, Respondent filed a motion for summary judgment. [Doc. 24 .]  On April 8, 2013, Petitioner filed a response in opposition, in which he withdrew Grounds Five and Six.  [Doc. 32.]  Accordingly, Respondent's motion as to remaining Grounds One through Four is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court

---

[6]Petitioner also indicated Ground Six was not raised to the highest South Carolina court with jurisdiction to hear it "based on not becoming ripe until appellate counsel's failure to raise Ground Five and is therefore an independent claim."  [Doc. 1 at 14.]

9

can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

10

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

11

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (I) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7] Further, strict time deadlines govern direct appeal and the filing

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re*

_____

at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

>                    *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.   A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*,

523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case

must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by

respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised,

it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised

by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66

F.3d 1350 (4th Cir. 1995).  Here, Respondent first contends Ground Two should be

summarily dismissed as vague because Petitioner failed to identify the allegedly

objectionable statements on which he bases his ineffective assistance claim.  [Doc. 25 at

16.] However, liberally construing the Petition, the Court concludes Petitioner is raising the

same claim in Ground Two that he raised in his petition for writ of certiorari to the South

Carolina Supreme Court, where he challenged defense counsel's failure to object to three

specific statements made by the solicitor.  [*Compare* Doc. 1 at 7, *with* Doc. 25-11 at 3,

8–10.]  Therefore, the Court disagrees that Ground Two should be dismissed as vague.

Respondent, in an alternative argument, also has construed Ground Two as raising

the same claim raised in the petition for writ of certiorari, where Petitioner argued defense

counsel should have objected to one comment in the solicitor's opening statement and two

comments in the solicitor's closing statement.  [Doc. 25 at 17–18.]  Respondent contends

Ground Two is procedurally barred as to the opening statement comment and one of the

closing statement comments.  [*Id.* at 18–19.]    The Court agrees Ground Two is

19

procedurally barred with respect to the opening statement comment but disagrees as to the closing statement comment.

Further, Petitioner contends he has presented two claims in Ground Four, a due process claim and an ineffective assistance of counsel claim.  [Doc. 32 at 24; *see* Doc. 1 at 10.]  Specifically as to the due process claim, Petitioner contends he was denied his Sixth Amendment right to confront witnesses when a witness's photo identification of Petitioner was introduced at trial through an investigator, but the witness was not produced by the State and defense counsel failed to secure the witness.  [Doc. 1 at 10; Doc. 32 at 24–25.]  Respondent has construed Ground Four as raising only an ineffective assistance claim and argues Petitioner is not entitled to relief.  [Doc. 25 at 22–23.]  For the reasons explained below, the Court concludes any due process claim Petitioner has raised in Ground Four is procedurally defaulted.

### Ground Two

#### Opening Statement Comment

Petitioner contends defense counsel provided ineffective assistance by failing to object to the following comment in the solicitor's opening statement:

> Reasonable doubt is not a crazy or foolish doubt.  Y'all could doubt whether or not there are fish in Lake Murray, but that would be a crazy or foolish doubt.  I simply ask that you focus on the witnesses under oath, on the evidence that's presented, and then after using your good old common sense to come to that reasonable conclusion: He either did it or he didn't do it. *There's no in between*.

[Doc. 25-11 at 9 (emphasis in original) (quoting App. 44).]  However, Petitioner did not use this statement as the basis for an ineffective assistance claim in his PCR application or at the PCR hearing.  Rather, at the PCR hearing, Petitioner argued defense counsel should

have objected to a different comment in the solicitor's opening statement.  [App. 649–50.]

Therefore, Petitioner raised his ineffective assistance claim with respect to the "[t]here's

no in between" comment for the first time on appeal of the PCR court's decision.

As stated, South Carolina law requires that all grounds for relief be stated in the

PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley*, 221 S.E.2d

at 770.  An applicant's failure to present an issue to the PCR court or to receive a decision

on an issue by the PCR court will result in the application of a procedural bar to that claim

by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).  If the

state courts would apply a procedural bar to a claim because of an earlier default in the

state courts, the federal court honors that bar.  *See Reed*, 468 U.S. at 11.  Thus, because

Petitioner failed to present his claim to the PCR court and the South Carolina Supreme

Court would apply a procedural bar to the claim,[8] Petitioner's claim is procedurally barred

in this Court unless he can show cause and prejudice or a fundamental miscarriage of

justice.  *See Carrier*, 477 U.S. at 495–96.

---

[8]The Court notes that, in denying Petitioner's petition for writ of certiorari, the South Carolina Supreme Court did not specify a basis for its denial.  [Doc. 25-13.]  The United States Supreme Court has held that,

> if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Coleman*, 501 U.S. at 735.  However,

> [t]his rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.  In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Id.* at 735 n.1.

*Closing Statement Comment*

Respondent contends Petitioner failed to raise an argument that the solicitor's comment in his closing statement that the victims not be victimized again by the jury not finding their testimony truthful was an improper appeal to sympathy. [Doc. 25 at 18–19.] However, Petitioner raised an ineffective assistance claim with respect to this comment at the PCR hearing, which he characterized as a "golden rule violation"[9] [App. 666], and in its order, the PCR court addressed Petitioner's claims regarding the closing statement comments [App. 708–09]. Petitioner also raised an ineffective assistance claim based on this comment in his PCR appeal and argued, "This statement not only invites the jury to render a verdict based upon sympathy, but it essentially places the jury in the shoes of a wrongdoer if they do not render a verdict." [Doc. 25-11 at 9–10.] The Court concludes that the characterization of the statement in the PCR appeal is sufficiently similar to the "golden rule" characterization Petitioner made at the PCR hearing to determine Petitioner raised the same claim at each level of the post-conviction process. Therefore, the Court disagrees that Ground Two is procedurally barred as to this closing statement comment and, below, analyzes Ground Two with respect to both closing statement comments identified by Petitioner as objectionable.

### Ground Four

As stated, Petitioner contends that, in Ground Four, he has raised both a due process and an ineffective assistance claim. [Doc. 32 at 24.] The PCR court

---

[9]"Golden rule" comments are those that invite the jurors to put themselves in the shoes of the victim or victims. *See, e.g.*, *United States v. Capers*, 453 F. App'x 352, 353 (4th Cir. 2011); *United States v. Susi*, 378 F. App'x 277, 283 n.5 (4th Cir. 2010) (quoting *Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978)); *Ins. Co. of N. Am., Inc. v. U.S. Gypsum Co., Inc.*, 870 F.2d 148, 154 (4th Cir. 1989).

acknowledged that Petitioner raised a due process claim based on a violation of his right to confront witnesses [App. 703 ("Applicant testified that his right to confront witnesses was violated.  He stated that at least one of the victims was not present at the trial.")] and summarily concluded that Petitioner had the opportunity to confront the State's witnesses [App. 708].  In his Rule 59(e) motion to alter or amend the PCR court's judgment, Petitioner argued the PCR court failed to address the following issue: "The confrontation violation consisted of two (2) witnesses not being available for cross-examination in which Applicant was found guilty of one (1) and not guilty of the other one."  [App. 714.]  The PCR court denied Petitioner's motion to alter or amend.  [App. 716.]

However, detrimental to his claim in this Court, in his petition for writ of certiorari, Petitioner raised only an ineffective assistance claim with respect to a Confrontation Clause violation.  [Doc. 25-11 at 3, 11–12.]  Because the due process claim of Ground Four was not fairly presented to the South Carolina Supreme Court, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### *Cause and Prejudice or a Fundamental Miscarriage of Justice*

Ground Two with respect to the opening statement comment and Ground Four with respect to the due process claim are barred from review by this Court unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred.  *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.

23

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  In this case, Petitioner has failed to even argue cause for the default of part of Grounds Two and Four and, instead, contends his claims are not procedurally defaulted because he raised the claims in state court.[10]  [*See* Doc. 32.]  Petitioner also failed to argue a fundamental miscarriage of justice has occurred—i.e., that he is actually innocent.  [*See id.*]  Therefore, Ground Two with respect to the opening statement comment and Ground Four with respect to the due process claim are barred from federal habeas review.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

---

[10]As stated, Petitioner did argue cause and prejudice with respect to Grounds Five and Six [Doc. 1 at 14], but he subsequently withdrew Grounds Five and Six [Doc. 32 at 26].  He has not argued cause and prejudice or a miscarriage of justice with respect to any other ground for relief.

independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Due Process Claims**

>  ***Ground One***

In Ground One, Petitioner contends he was denied a fair trial because his presumption of innocence was removed when a police officer testified before the jury that Petitioner was featured on an episode of "Midlands' Most Wanted," placing Petitioner's character in issue by falsely portraying him as a dangerous fugitive. [Doc. 1 at 5.] Respondent contends (1) this is an issue of state law and, thus, is not cognizable in federal habeas review, and (2) the curative instruction was sufficient to cure any possible prejudice and, thus, Petitioner has failed to show an unreasonable determination of the facts or application of federal law. [Doc. 25 at 12–16.]

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). More specifically, "a claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted," *Spencer v. Murray*, 5 F.3d 758, 762 (4th Cir. 1993), and "[i]t is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented," *Grundler v. State of N.C.*, 283 F.2d 798, 802 (4th Cir. 1960); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)). Thus, when presented with a challenge to a state evidentiary ruling, a court must determine whether the challenged ruling "'so infected the entire trial that the resulting conviction

26

violates due process.'" *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, an officer testified on direct examination that, in an effort to locate Petitioner, Petitioner was featured on "Midlands' Most Wanted" in February 1996. [App. 416.] Defense counsel moved for a mistrial on the grounds that the evidence was irrelevant and placed Petitioner's character in issue. [App. 417–27.]  The trial judge denied the mistrial motion and, instead, gave a curative instruction to the jury, instructing the jury that the testimony was given "only for the purpose of explaining why it has taken so long for the trial of this case come about.  It was not meant to reflect on the character of [Petitioner]."  [App. 427–31.] The South Carolina Court of Appeals, reviewing the trial judge's evidentiary ruling on direct appeal, upheld the trial judge's ruling under applicable state law, including cases that hold the decision to grant or deny a motion for mistrial is within the sound discretion of the trial judge, and a mistrial motion should only be granted "where an incident is so grievous that prejudicial effect can be removed in no other way."  [Doc. 25-9 at 2 (citing *State v. Howard*, 374 S.E.2d 284, 285 (S.C. 1988); *State v. Kelsey*, 502 S.E.2d 63, 73 (S.C. 1998))].

Upon review, the Court notes that, under federal law, whether to grant a mistrial is within the discretion of the trial court, and an instruction to disregard objectionable evidence usually cures any prejudice from the admission of the evidence.  *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997) (holding that the decision whether to grant a mistrial is left to the broad discretion of the trial court); *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir.1996) ("[A] cautionary instruction . . . cures any unfair prejudice except

27

in the most extraordinary circumstances."); *see also United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980) ("[P]rejudice, if any, can be generally obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." (citation omitted)). In Petitioner's case, there is no indication that the trial judge abused his discretion by denying the motion for a mistrial—or the subsequent motion for a new trial—particularly in light of the judge's curative instruction. Further, Petitioner does not contend the curative instruction was ineffective. Accordingly, Petitioner has failed to establish that the state court's adjudication of the matter was contrary to clearly established Supreme Court precedent or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief with respect to Ground One.

### Ground Three

In Ground Three, Petitioner contends his due process rights were violated by the State's destruction of the first set of photo lineups used to issue warrants for a group of suspects that did not include him. [Doc. 1 at 8.] Petitioner alleges that, before he became a suspect, a group of suspects was identified from a photo line-up that did not include Petitioner. [*Id.*] Petitioner contends this initial photo lineup was exculpatory,[11] and the destruction of this evidence violated his due process rights. [*Id.*] Respondent contends the PCR court, in concluding Petitioner failed to establish a due process violation, correctly analyzed this issue under *Arizona v. Youngblood*, 488 U.S. 51 (1988), and thus, Petitioner is not entitled to federal habeas relief. [Doc. 25 at 21–22.]

---

[11]Petitioner states that one of the victims originally identified one of these first suspects as the man who robbed her, and therefore, her "identification was of exculpatory value to Petitioner." [Doc. 32 at 21.]

In *Youngblood*, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  488 U.S. at 337.  However, "when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld."  *Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (per curiam); *see United States v. Agurs*, 427 U.S. 97, 109–11 (1976) (holding that, while a prosecutor does not have a duty to disclose his entire file to the defense, "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request"); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  Thus, whether a defendant's due process rights were violated by a failure to preserve evidence depends in part on the materiality of the evidence to the defendant.  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 488–89 (1984) (internal citation and footnote omitted).

Here, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find Petitioner's due process rights were violated.  [App. 574–699 (evidentiary hearing), App. 701–12 (PCR court's findings of fact and conclusions of law).]  In its order,

29

the PCR court noted that, in the hearing before the court, defense counsel testified that there were several photo line-ups used during the course of the case and that he appeared on Petitioner's behalf at a pretrial hearing and argued to suppress the photo line-ups. [App. 704.]  The PCR court also noted defense counsel testified that there was a detailed discussion in chambers with the solicitor and the judge regarding these line-ups and that the judge made it clear that he was not going to keep out the line-ups.  [*Id.*]  The PCR court, applying *Youngblood*, concluded Petitioner was not prejudiced by the destruction of the photo line-up evidence and that Petitioner failed to show that the evidence was destroyed in bad faith or that the evidence would have been exculpatory.  [App. 709–11.]

The record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision and demonstrates the PCR court's decision was not an unreasonable application of *Youngblood*.  There is no indication in the record that the destroyed evidence was exculpatory or that the destruction of the evidence was intentional.  [*See generally* App. 677 (Petitioner's testimony at the PCR hearing that "I feel that the favorable lineup could have, if not exonerated me, would have been used to impeach the credibility about the lineups that they did admit into the record").]  On re-cross examination by defense counsel at trial, an agent for the State Law Enforcement Division ("SLED") testified that not all the line-ups were available and that the ones that were "not pertinent" were destroyed.  [App. 462.]  Moreover, Petitioner was identified through other photo line-ups, and two of the victims identified Petitioner in open

30

court as one of the men who participated in the robbery.  [App. 158–61, 198–202.]  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on Ground Three.

**Ineffective Assistance Claims**

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[12]  *Richter*, 131 S. Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough*

---

[12] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

### Ground Two

In Ground Two,[13] Petitioner alleges he was denied the effective assistance of counsel when counsel failed to object to the State's closing argument, which shifted the State's burden of proof and appealed to the jury's sympathy. [Doc. 1 at 7.] Petitioner contends that, throughout the State's closing argument, the solicitor made prejudicial comments to which defense counsel failed to object. [*Id.*] Respondent argues Ground Two should be denied on the merits because the PCR court properly denied relief. [Doc. 25 at 19–21.]

The PCR court held an evidentiary hearing and outlined a factual basis for declining to find defense counsel's representation fell below the *Strickland* and applicable state law standards. [App. 574–699 (evidentiary hearing), App. 701–12 (PCR court's findings of fact and conclusions of law).] The PCR court noted defense counsel testified that he did not make any objections during the solicitor's closing argument because, as a general rule, it does not benefit and often hurts the defendant by drawing attention to something. [App. 705.] The PCR court also noted defense counsel's testimony that, after reviewing the solicitor's closing comments, he could see points at which an objection may have been

---

[13]As discussed, in Ground Two, Petitioner also challenged defense counsel's failure to object to one of the comments in the solicitor's opening statement, but Petitioner procedurally defaulted this portion of Ground Two by failing to raise this specific challenge to the PCR court.

appropriate but that he did not find the comments objectionable at the time, and defense

counsel did not believe that an objection to the solicitor's closing would have changed the

outcome of Petitioner's trial. [App. 705–06.] In analyzing Petitioner's ground for relief, the

PCR court made the following findings:

> This Court further finds that the solicitor's closing
> arguments must be viewed in the context of the entire record.
> Specifically, Applicant directed this Court's attention to pages
> 498, 501, and 503 of the transcript. Applicant offers these
> pages as examples of where the solicitor improperly shifted the
> burden to the defense through certain questions he asked and
> through inserting his personal opinion into his closing
> arguments. This Court does not agree. While the State's
> closing arguments must be confined to evidence in the record
> and the reasonable inferences that may be drawn from the
> evidence, to be entitled to a new trial for improper closing
> arguments Applicant must show the Solicitor's comments so
> infected the trial with unfairness as to make the resulting
> conviction a denial of due process. After reviewing the entire
> record, this Court does not find that any comments or
> questions by the solicitor so infected the trial that a new trial is
> warranted. This Court is not convinced that the solicitor's
> arguments even reach the level of being improper, but certainly
> there is no evidence that Applicant was prejudiced.
>      Additionally, this Court does not find that Mr. Ellisor was
> ineffective for failing to object. He provided rational
> explanation as to why he did not object. It is easy as a lawyer
> to reflect back on a particular argument and see objections that
> could have been made; and this Court appreciates Mr. Ellisor's
> honesty in stating that he probably should have objected at
> certain points; however, this Court accepts Mr. Ellisor's
> reasoning as to why he did not at the time. Furthermore, there
> has been no showing by Applicant that the outcome of his trial
> would have been different if any objections had been made.

[App. 708–09 (internal citations and quotation marks omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective

assistance claim was neither contrary to nor an unreasonable application of applicable

Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is

the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  For example, Ellisor agreed that, in hindsight, there were certain comments made in closing that were impermissible; however, Ellisor concluded that, even if he had objected during closing, it would not have changed the outcome of the trial because of the witnesses at trial that identified Petitioner in open court.  [App. 619–20; *see* App. 158–61, 198–202 (testifying Petitioner was one of the men involved in the robbery).]  Nothing in the record before the Court indicates an objection to the challenged comments in the solicitor's closing would have changed the outcome of the trial.  Therefore, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to federal habeas relief as to Ground Two.

### *Ground Four*

In Ground Four, Petitioner alleges he was denied the effective assistance of counsel when a witness's photo identification of Petitioner was introduced at trial, but the witness was not produced by the State and defense counsel failed to object.  [Doc. 1 at 10.]  More specifically, Petitioner contends the witness's photo line-up identification of Petitioner was introduced through an investigator without an in camera suppression hearing and without testimony by the witness, and defense counsel was ineffective by failing to object pursuant

34

to the Sixth Amendment's Confrontation Clause.  [*Id.*]  Respondent contends the PCR

court properly found counsel was not ineffective, and thus, Petitioner is not entitled to relief.

[Doc. 25 at 22–23.]

As stated, in its order following a hearing on Petitioner's application, the PCR court

acknowledged that Petitioner raised a due process claim based on a violation of his right

to confront witnesses [App. 703 ("Applicant testified that his right to confront witnesses was

violated.  He stated that at least one of the victims was not present at the trial.")] and

summarily concluded that Petitioner had the opportunity to confront the State's witnesses

[App. 708].  The PCR court also made the following findings:

> Applicant testified that Mr. Ellisor did not do anything at
> his trial.  He stated that Mr. Ellisor did not make a motion to
> suppress the line-up or any evidence.  He stated that Mr.
> Ellisor did not ask for a <u>Biggers</u> hearing.[14] . . .
> . . . .
> Mr. Ellisor testified that there were several photo line-
> ups taken during the course of this case.  He testified that he
> appeared on Applicant's behalf at a pretrial hearing and
> argued to suppress the photo line-ups.  He testified that the
> trial judge denied his motion.  Mr. Ellisor testified that there
> was detailed discussion in chambers with the solicitor and the
> judge regarding these line-ups.  He stated that the judge made
> it clear that he was not going to keep them out.  Mr. Ellisor
> testified that he ultimately let that issue go.
> . . . .
> This Court finds that Applicant's testimony is not
> credible.  This Court does find Mr. Ellisor to be credible.  It is
> clear from the testimony and other evidence before this court
> that Mr. Ellisor's representation of Applicant meets all
> applicable standards for defense attorneys in South
> Carolina. . . .

---

[14] A *Biggers* hearing tests the likelihood of misidentification in a pre-trial identification of the alleged criminal using five factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

. . . .

This Court finds that Applicant's rights were not violated during his trial. Contrary to Applicant's testimony, the record before this Court clearly indicates that every measure was taken to preserve Applicant's rights. Applicant did have the opportunity to confront the State's witnesses. He had an opportunity to present a defense. He further had the opportunity to challenge the evidence presented by the State. Applicant's trial was, in deed, fair.

. . . .

This Court does not find Mr. Ellisor ineffective for failing to request a <u>Neil v. Biggers</u> hearing. There is no indication such a hearing would have been beneficial to Applicant. . . .

. . . .

Applicant has completely failed to show that he suffered any prejudice from anything that Mr. Ellisor may or may not have done in this case. There is no reason to believe the outcome of his trial would have been different had certain things been handled differently. There certainly is no reason this Court can find to overturn his conviction and grant a new trial.

[App. 703, 704, 707, 708, 711 (footnote added).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, testimony regarding the absent witness's identification of Petitioner was received from a

36

SLED agent, and defense counsel cross-examined the agent about the photo line-up procedure.[15]  [App. 432–48, 451–53, 461–62.]  Defense counsel also moved to suppress the photo line-ups.  [App. 593–94.]  Additionally, Petitioner was identified through photo line-ups by two witnesses who did testify at trial, and defense counsel cross-examined these witnesses.  [App. 137–223; *see also* App. 456–57 (testifying Petitioner was identified by three witnesses, one of whom was not present at the trial).]  Nothing in the record before the Court indicates the lack of an objection based on the Confrontation Clause prejudiced Petitioner.  Therefore, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to federal habeas relief based on Ground Four.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

June 26, 2013
Greenville, South Carolina

---

[15]The agent testified that the witness was not present because she lived out of state at the time of the trial.  [App. 462.]